# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2849-18T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF A.D.,
SVP-719-15.

_____

Argued May 14, 2019 – Decided May 30, 2019

Before Judges Fisher, Hoffman and Suter.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-719-15.

Joan D. Van Pelt, Assistant Deputy Public Defender, argued the cause for appellant A.D. (Joseph E. Krakora, Public Defender, attorney).

Arundhati MohanKumar, Deputy Attorney General, argued the cause for respondent State of New Jersey (Gurbir S. Grewal, Attorney General, attorney).

PER CURIAM

A.D. appeals from an October 19, 2018 order, finding him to be a sexually

violent predator and ordering his continued commitment to the Special

Treatment Unit, pursuant to the New Jersey Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. We affirm.

In 2005, A.D. entered guilty pleas to two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), and one count of second-degree criminal attempt to commit aggravated sexual assault, N.J.S.A. 2C:14-2(a). The convictions arose from the rapes of two teenage girls and the attempted assault on another teenage girl, all occurring within a ten-week period in 2002.

When he entered his guilty pleas, A.D. admitted that on May 8, 2002, he grabbed J.K. from behind as she was walking on the street and dragged her into an alley where he forced her to submit to an act of vaginal penetration. He further admitted that on June 10, 2002, he encountered S.W. on the street, dragged her a substantial distance and committed an act of sexual penetration upon her against her will. He also admitted that on July 16, 2002, he accosted E.K., grabbed her and dragged her a substantial distance where he attempted to commit an act of vaginal penetration.

After his guilty pleas, the court referred A.D. to the Adult Diagnostic and Treatment Center (ADTC) for psychological examination and a "determination of whether [his] conduct was characterized by a pattern of repetitive, compulsive behavior and, if it was, a further determination of the offender's amenability to

A-2849-18T5

sex offender treatment and willingness to participate in such treatment." N.J.S.A. 2C:47-1.

Dr. Mark Frank, the examining psychologist, reported that A.D. accepted responsibility for the two rapes but denied using a gun, as alleged by the victim of the first rape, and, despite his guilty plea, denied responsibility for the attempted aggravated sexual assault. A.D. claimed the prosecutor threatened to withdraw the plea offer unless he entered guilty pleas to all three offenses. A.D. "described himself as an alcoholic" and found "it difficult to control his sex drive when he drinks." He related the rapes occurred when "he forced the women to submit to previously agreed upon sexual relations after they changed their minds and no longer wished to proceed."

According to Dr. Frank, A.D.

> experiences heightened sexual arousal under circumstances in which he is exerting dominance and control over his partners. He would find it highly arousing to cheat and manipulate prostitutes. At times, he would pay them for sex and then rob them of the money he gave them after the sex act was completed. On other occasions, he[] drove prostitutes to remote locations and forced them to have sex with him without payment or risk being kicked out of his vehicle and abandoned far from home.
>
> [A.D.] described similar feelings of arousal connected to the coercive elements of his behavior in the instant offenses. "You do feel powerful," he said. "It makes

you feel dominant. I might have these thoughts when I was sober, like forcing people to do things.

But once I get intoxicated, it takes over and makes you go ahead and do them." Although he reportedly felt guilty following the incident with J.K. and promised himself he would never do anything like that again, he subsequently engaged in similar behavior with S.W.

A.D. told Dr. Frank he believed he was likely to similarly reoffend in the future if he did not have successful psychotherapy. Dr. Frank found the requisite elements of repetitive and compulsive behavior for sentencing A.D. under the New Jersey Sex Offender Act, and concluded, "Although the prognosis is guarded, [A.D.] is potentially amenable to treatment and he said he would be willing to participate fully" in the ADTC program.

In December 2005, the Criminal Part sentenced A.D. to concurrent fifteen-year terms subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, to be served at the ADTC, community supervision for life, a five-year term of parole supervision, Megan's Law requirements, N.J.S.A. 2C:7-2, and appropriate fines and penalties.

At the time of his discharge from the ADTC, A.D.'s last therapist reported his participation in treatment had been variable. The therapist described A.D. "as having limited motivation and not being invested in treatment" and that he "has not addressed the 'adrenaline rush' he felt when he raped." A.D.'s score on

4

the Static-99R, which is used to estimate risk for sexual reoffending, suggested he is a low-moderate risk.

In April 2015, shortly before A.D. completed his prison term, the State filed a petition to have him civilly committed under the SVPA. At the hearing conducted on the State's petition, the State presented the testimony of a psychiatrist, Dr. Roger Harris, and a psychologist, Dr. Christine Zavalis. A.D. presented testimony from a psychologist, Dr. Gianni Pirelli. All three experts diagnosed A.D. with paraphilic disorder, non-consent.

Dr. Harris and Dr. Zavalis both concluded that A.D. suffers from a mental abnormality or personality disorder that would predispose him to sexually reoffend. Both experts also agreed that A.D.'s Static-99 score did not accurately reflect the actual risk posed by him because his risk to sexually reoffend was increased by his paraphilia, antisocial attitudes and behaviors, poor cognitive problem solving and poor self-regulation.

While Dr. Pirelli acknowledged that A.D. met the criteria for other specified paraphilic disorder, which predisposed him to commit acts of sexual violence, he opined that A.D.'s experience of such symptoms had dissipated over the years. Dr. Pirelli further acknowledged that A.D. posed "a significant risk" if released to the community "in the absence of a highly structured discharge

plan"; nevertheless, Dr. Pirelli testified that A.D.'s treatment needs could be met in the community. In concluding A.D.'s mental conditions did not impact his capacity to refrain from sexual violence, Dr. Pirelli relied upon the fact that A.D. had not been under the influence of alcohol since his arrest and that his paraphilic disorder had "been largely controlled for some time." As we noted in our opinion affirming A.D.'s initial commitment, "The probative force of this opinion is substantially undercut by the fact that A.D. has been incarcerated since his arrest and therefore unable to get under the influence of alcohol or act on his paraphilic disorder." In re Civil Commitment of A.D., No. A-5145-14 slip op. at 14 (App. Div. October 27, 2017). We further found "reasonable support in the record" for "the trial court's determination to give greater weight to the expert opinions of Dr. Harris and Dr. Zavalis and to reject Dr. Pirelli's opinion." Ibid.

At the hearing for the order under review, the court again heard from Dr. Zavalis for the State and Dr. Pirelli for A.D., who both testified consistent with the opinions they offered in 2015. In addition, the State presented the testimony of Dr. Indra Cidambi, a psychiatrist, who completed a review of A.D.'s records and interviewed him for eighty minutes. Her diagnosis for A.D. was "other specified paraphilia disorder non-consent" and "other specified personality

disorder with anti-social features." While Dr. Cidambi acknowledged that A.D. has made some progress in his treatment, she testified he remains highly likely to sexually re-offend if not confined in a secure facility for control, care and treatment.

After reviewing the testimony of the three expert witnesses, the trial judge found clear and convincing evidence that A.D. continues to suffer from a personality disorder and remains "highly likely to sexually reoffend." The judge did acknowledge A.D.'s progress and indicated he is "very close to the less than highly likely discharge plan."

On this appeal, our review of the trial judge's decision is extremely limited. In re Commitment of J.P., 339 N.J. Super. 443, 459 (App. Div. 2001) ("The scope of appellate review of a trial court's decision in a commitment proceeding is extremely narrow."). We will disturb the trial court's decision only where there was a clear abuse of discretion, and "it is our responsibility to canvass the record, inclusive of the expert testimony, to determine whether the findings made by the trial judge were clearly erroneous." In re Civil Commitment of W.X.C., 407 N.J. Super. 619, 630 (App. Div. 2009), aff'd, 204 N.J. 179 (2010). In light of his expertise in handling these cases, "[w]e must give the 'utmost deference' to the reviewing judge's determination of the

A-2849-18T5

appropriate balancing of societal interest and individual liberty." Ibid. (citation omitted).

Before us, A.D. contends the State failed to prove by clear and convincing evidence that he remains "highly likely to sexually reoffend." We disagree. The record provides adequate support for the order under review, which is consistent with the controlling legal principles. The trial judge assessed and weighed the evidence provided by the State's experts and the evidence provided by A.D. and his expert. The judge noted the "very serious . . . very violent offenses" committed by A.D., but acknowledged they occurred sixteen years ago and gave A.D. credit for progress in his treatment. We discern no basis to reject the trial judge's findings or conclusions.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2849-18T5